


RECEIVED
IN LAKE CHARLES, LA

JUL 12 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| ALBERT HARPER | : | DOCKET NO. 2:04 CV 1121 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| PRUDENTIAL INSURANCE COMPANY | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Presently before the court is a Motion for Summary Judgment filed by the defendant, Prudential Insurance Company of America ("Prudential") [doc. 23]. The plaintiff filed an opposition and the defendant filed a reply.

Summary Judgment Standard

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c) The movant bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, and answers to interrogatories, admissions on file and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir. 1988). Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials

in the pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53; *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514-15; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

## Law and Analysis

### Jurisdiction

Harper's claim to recover long term disability payments "relates to an employee benefit plan" thus falling within the scope of ERISA's preemption provision. As an employee, Harper is a "participant" under the rubric of ERISA, 29 U.S.C. §§ 1002(7). He is able to assert his claim pursuant to ERISA's civil enforcement provision, 29 U.S.C. §§ 1132(a)(1)(B). Harper claims a violation of ERISA when he alleges a denial of benefits. A federal question exists as to his claim and jurisdiction properly lies with this court. *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 945 (5th Cir (Tx) Jan 12, 1995).

### Standard of Review for Plan decisions

A denial of ERISA benefits by a plan administrator is reviewed by the courts *de novo* unless the plan gives the plan administrator "discretionary authority to determine the eligibility for benefits or to construe the terms of the plan." *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1305 (5th Cir.1994)(*quoting Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989)). *Southern Farm Bureau Life Insurance Co. v. Moore*, 993 F.2d 98 (1993), states that because ERISA does not dictate the appropriate standard of review for evaluating benefit determinations of plan administrators, courts must first look to the plan terms to determine if the plan administrator has the discretionary authority to interpret the plan terms. 993 F.2d at 100.

The abuse of discretion standard is the appropriate standard of review to challenges to a plan administrator's interpretation of the plan terms when that plan grants the administrator the authority to make a final and conclusive determination of the claim. *Duhon*, 15 F.3d at 1305 (*citing Bruch*, 489 U.S. at 115, 109 S.Ct. at 956). In applying the abuse of discretion standard, the court must analyze whether the plan administrator acted arbitrarily or capriciously. *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 829 (5th Cir.1996).

Under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), when an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion. The court reasoned that the issues are often complicated by the relative sophistication of the parties. An employer may have an incentive to choose a less expensive benefit plan for his employees, even though that plan grants a self-interested administrator discretion to resolve claims. When an employee files such a claim, the administrator has a financial incentive to deny the claim and often can find a reason to do so. The employee, on the other hand, is often not a sophisticated negotiator and therefore may not best present his case to the administrator.

Since *Bruch*, the Fifth Circuit struggled with the appropriate standard of review for determinations by a self-interested administrator with discretionary authority using a sliding scale standard. *See, Salley v. E.I. DuPont De Nemours & Co.* 966 F.2d 1011 (5th Cir.1992) (holding that a conflict of interest required the court to more closely examine the denial of health care benefits under the plan); *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1306 (5th Cir.1994) (holding that court must "weigh this possible conflict as a factor in our determination of whether the plan administrator abused his discretion, instead of ... altering the applicable standard of review"); *Sweatman v. Commercial Union Insurance Co.*, 39 F.3d 594, 599 (1994) (holding that conflict does not change the standard of review, but should be weighed in determining whether administrator abused his discretion); *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 638-42 (5th Cir.1992)("We note that the arbitrary and capricious standard may be a range, not a point. There may be in effect a sliding scale

of judicial review of trustees' decisions--more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion is...."). Under this "sliding scale" standard, the court always applies the abuse of discretion standard, but gives less deference to the administrator in proportion to the administrator's apparent conflict.

Prudential is both the insurer and the claims administrator of the policyholder's long term disability plans. Because of this, the Court must apply a "sliding scale standard" to the abuse of discretion test and give Prudential's decision a lesser degree of deference than would be given the decision of an administrator who does not have a conflict of interest.

<u>Process for Reviewing Administrator's Denial of Benefits</u>

An ERISA claim administrator's determination is not an abuse of discretion when it is supported by substantial evidence. *Meditrust Fin. Sers. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999). When reviewing an administrator's determinations, the court is limited to the evidence in the administrative record at the time the determination was made. *Gooden v. Provident Life & Accident Ins.*, 250 F.3d 329, 333 (5th Cir. 2001).

Facts

The plaintiff, Albert Harper ("Harper"), has filed a complaint seeking to recover disability insurance proceeds from the defendant, Prudential.

Harper was a participant in the Coushatta Tribe of Louisiana d/b/a Grand Casino Coushatta's Employee Welfare Benefit Plan ("the Plan"), which was underwritten and issued by Prudential. The Plan provides for Short Term Disability ("STD") and Long Term Disability ("LTD") benefits payable to the participant if the participant becomes disabled while eligible under the Plan. The Plan, established and maintained by the Coushatta Tribe of Louisiana d/b/a Grand Casino Coushatta, provides Prudential with the sole discretion to interpret the terms of the Plan documents and to make

factual findings and to determine the eligibility of a Plan participant.

Prior to claiming disability, the plaintiff was employed as a Lead Maintenance Engineer in a hotel-casino owned by the Coushatta Tribe. As a Lead Maintenance Engineer, Harper performed routine maintenance and repair work.[1]

### STD Claim

The plaintiff left work on March 19, 2002 with complaints of headaches and respiratory problems resulting from exposure to mold, which he indicated was work related.[2] Dr. Andrew Campbell, one of the plaintiff's treating physicians, noted that the plaintiff may have been exposed to mold in his workplace as a result of removing wallpaper with mold.[3]

The Policy and Plan provides STD benefits when certain conditions are met, specifically,

> "You are disabled when Prudential determines that:
>
> - you are unable to perform the **material and substantial duties** of your **regular occupation** due to your **sickness** and **injury**;
> - you have 20% or more loss in weekly earnings due to the same sickness or injury.
>
> The loss of a professional or occupational license or certification does not, in itself, constitute disability."

(Emphasis in the original).

The Policy also defines the disabilities that are not covered under the Plan, including

---

[1] See plaintiff's job description, Bates labeled PRU-HARPER 0237 through PRU-HARPER 0241, attached to Motion for Summary Judgment as Exhibit B.

[2] Complaint ¶2.

[3] See Notes dated March 28, 2002, by Dr. Campbell, Bates labeled PRU-HARPER 0288, attached to the Motion for Summary Judgment as Exhibit E.

5

disabilities caused by an occupational sickness or injury:

> Occupational sickness or injury means an injury arising out of, or in the course of any work for wage or profit regardless of employer, or a sickness covered, with respect to such work, by any workers' compensation law, occupational disease or injury.[4]

After considering the information submitted to Prudential and the relevant policy provisions, Prudential denied the plaintiff's STD claim on May 14, 2002. Prudential found that the Plan and Policy excludes coverage for disabilities caused by, contributed by, or resulting from occupational sickness or injury. Although the plaintiff was advised of his right to appeal this decision, he did not do so.

The plaintiff argued that because Prudential based its denial of LTD on the opinion of its Medical Review Director that building related illness due to mycotoxicosis has never been proved in the medical literature, it cannot "deny benefits to Mr. Harper by then claiming he sustained an occupational sickness or injury."[5] Prudential, however, does not dispute that the plaintiff was exposed to mold at work. LTD benefits were denied based on a finding that Harper was not disabled from that exposure. It is apparent from the plaintiff's argument that he has also filed a claim for workers' compensation, relying on the premise that he was injured at work.

The policy exclusion is clear and STD benefits are excluded from coverage when the alleged illness arises out of Harper's work. Prudential was not arbitrary and capricious in denying coverage on this basis.

## LTD

In lieu of appealing his STD claim, Harper, in September 2002, made a claim for LTD

---

[4] See Exhibit A PRU-HARPER 0288, attached to the Motion for Summary.

[5] Plaintiff's opposition brief, p. 3.

6

benefits. Harper alleged that he had missed work since March 19, 2002.

The Policy provides for payment of LTD benefits to qualified individuals if the policy holder meets all contractual obligations, including:

You are disabled when Prudential determines that:

- You are unable to perform the **material and substantial duties** of your **regular occupation** due to your **sickness** and **injury**;
- you have 20% or more loss in weekly earnings due to the same sickness or injury.

After 12 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you:

- are unable to perform, without **substantial assistance**, at least two **activities of daily living**; or
- have a severe **cognitive impairment**, which requires **substantial supervision** to protect you from threats to health and safety.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

(Emphasis in the original).[6]

In order to recover LTD benefits, the policyholder must also continuously meet the definition of Total Disability through the 180 day elimination period. "Elimination period means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential."[7]

Harper last worked on March 19, 2002. He would not have been eligible for LTD benefits unless he was totally disabled as defined by the policy throughout the 180-day elimination period, or until September 14, 2002. After reviewing the medical records, Prudential determined that the

---

[6] Exhibit A to Prudential Motion for Summary Judgment.

[7] See *id.*

medical evidence did not support a finding of total disability throughout the elimination period and denied LTD benefits.[8]

The plaintiff appealed Prudential's decision. Prudential then received additional medical information from the plaintiff's treating physicians, Dr. Campbell and Dr. High.

### Administrative Record

The plaintiff's neurologist[9], Dr. William L. High, M.D., diagnosed Harper with mild motor polyneuropathy which involves both axonal and demylinating features. Dr. High ordered an extensive work-up for the treatable causes of neuropathy including hemoglobin A1C, vitamin B12 level, serum monoclonal gammopathy, ANA, sed rate, CBC, serum lead and arsenic and a thyroid panel. All of these studies were normal.[10] An MRI on Harper was also normal. Dr. High never indicated that the plaintiff was totally disabled. Dr. High never mentioned Harper's ability or inability to work.[11] On June 17, 2002, Dr. High wrote that Harper showed abnormal antibody formation to toxigenic molds. This was based upon Harper's telling Dr. High that he had been exposed to mold at work. Dr. High stated that Harper had complaints consistent with toxic exposure.

---

[8] See letter dated September 16, 2003, denying benefits. Exhibit H to the Motion for Summary Judgment, PRU-HARPER 0166-0168.

[9] Medical records PRU-HARPER 211-388.

[10] See letter dated June 17, 2002, to Dr. Andrew Campbell. Exhibit G to Prudential Motion for Summary Judgment; MRI of auditory canals normal PRU-HARPER 220; MRI of brain normal PRU-HARPER 224.

[11] In his opposition to the Summary Judgment, the plaintiff does not direct the court to any medical evidence addressing disability or any medical opinion addressing the plaintiff's ability to work.

Dr. High referred Harper to a toxicologist, Dr. Andrew William Campbell, M.D..[12] Dr. Campbell noted that Harper may have been exposed to mold at work, but never advised Harper to remain out of work. Dr. Campbell notes Harper's panoply of complaints: abnormal involuntary muscle movement, joint pain, blurred vision, fatigue, headaches, memory loss, nausea, numbness, severe muscle weakness, and vertigo.[13] Although Dr. Campbell noted that Harper was "not working due to illness since 3/2002,"[14] Dr. Campbell did not address Harper's ability to return to work or whether or not he had any extent of disability.

Prudential submitted the medical information to Dr. Joyce Bachman for an Internal Medical Director review. Dr. Bachman reviewed the plaintiffs records submitted by Dr. High and Dr. Campbell from March 28, 2002, through and including July 30, 2003. After reviewing Prudential's entire file, Dr. Bachman found that Harper's condition was more an iatrogenic condition with fear anxiety and associated depression than real disease. She reasoned that when mold-related symptoms occur, they are likely the result of transient irritation, allergy or infection. More importantly, she noted that all of Harper's lab work was normal and fungal serology was within normal range. His pulmonary exams were normal. She found this surprising since Harper has a 70 pack a year history of smoking. Dr. Bachman found that the tests performed by the neurologist and the toxicologist were thorough. All of the tests and blood work were within the normal range with the exception of mild neuropathy, hearing loss, and an elevated IgE, which is consistent with exposure to an allergen. Dr. Bachman found no objective medical evidence that precluded Harper from engaging in his own

---

[12]   Medical records PRU-HARPER 190-211.

[13]   PRU-HARPER 190.

[14]   PRU-HARPER 195-197.

9

or any occupation. She also noted that building-related illness due to myotoxicosis has never been proved in medical literature.

The plaintiff also submitted to a Mini Mental Status Exam ("MMSE") and scored a 28 out of 30, which meant that the plaintiff did not suffer from any cognitive impairment.[15]

After reviewing the information in the file, including Dr. Bachman's report and the MMSE results, Prudential determined that there was no objective medical evidence to preclude the plaintiff from engaging in his own occupation or any occupation and Prudential upheld its prior decision denying the plaintiff LTD benefits.[16] Further, Prudential found that the plaintiff did not meet the requirements of the 180-day Elimination Period, in that the plaintiff was able to work from March 19, 2002 through September 14, 2002.

Based upon the medical evidence in the administrative record, the court finds that Prudential was not arbitrary and capricious in denying benefits on September 16, 2003, or November 24, 2003. Accordingly, Prudential's Motion for Summary Judgment will be granted.

Lake Charles, Louisiana, this _12_ day of July, 2005.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[15] Exhibit M to Prudential Motion for Summary Judgment.

[16] Exhibit L to Prudential Motion for Summary Judgment.